The opinion of the Court was delivered by
ColcocK, J.
The first ground presents two points for determination : First, whether the grant to William Levingston and his associates, is void for uncertainty f[1] And, secondly, whether it is forfeited for nonperformance of the condition ? As to the first point there can be no doubt, as has been argued, that a deed may be void for uncertainty; but if a deed be in part certain, and in no other part uncertain, it does not follow that it is void; for the rule is, that such construction shall be given, if possible, ut res magis valeat quam pereat. Now, as to Lev-ingston, the deed is certain. It is to him ; and our not being able to *616 identify his associates does not render the deed void. The word has no technical meaning, but it bears a strong analogy in common parlance to the word assigns. And when we read the deed through, and see that the object was to settle an uninhabited portion of country with a certain description of persons, it is easy to discover that it was intended by the grantor to vest the whole of the legal estate in Levingston, with autho-*¿0^1 rby t° bim to regrant or convey any part thereof to such ^person -I or persons as would associate with him in the undertaking to settle the land; and this view of the subject is supported by the deed which he afterwards makes to Hamilton, in which he styles him his associate. But if there had been persons in esse at the time, who were denominated his associates, who might then have taken under the grant, after a lapse of sixty years and an accompanying possession by those to whom Hamilton sold, a deed from the associates to Levingston, might be fairly presumed.
Upon the second point in this ground, the plaintiff’s counsel contended, that the condition being subsequent, it will be presumed to have been performed; and that if not, the grant must be set aside by a regular process of law. To which it was replied, that the grant reserved to the grantor the right of re-entry, on the failure to perform the condition, and that the subsequent grant may be considered as evidence of that re-entry, on the failure to perform the condition. It is certain that, • where a grant has once passed the great seal, it cannot be revoked, except by some legal proceeding, and this for the most obvious reason. The party may have it in his power to show a compliance with the condition, or a release from the performance of it. 6 Comyn’s Digest, 63, letter D, 10. 5 Com. 214, title Patent. Despotic indeed would be that government which would exercise the power of revoking at will, all grants of land which it may have made to individuals, or of determining, without the intervention of a judicial tribunal, where there was ground for a revocation. The usual mode in England, is by scire facias in equity, or by process on the law side of the Exchequer Court. But if it were consistent with the principles of justice, that the sovereign power should of itself determine when a grant should be revoked ; a second grant of land in this State should not be evidence of such revocation, for they are often made without the knowledge of the officer who is empowered to sign the grant.[1] It not unfrequently occurs that there are two or three grants *4061 *^01’ ^le same ^an^’ an<^ Pubbc officers perfectly ignorant of this fact. The younger grant in this case, then, cannot be considered as any evidence of the revocation of the elder, but that remains in full force.
The second ground has been determined in the consideration of the first. A deed from the associates, if we can suppose them grantees, would be presumed, after a lapse of so many years, and a possession under Lev-ingston.
Upon the third ground, the insufficiency of the proof of the will, I take it to be a well established doctrine, that a deed of thirty years may be given in evidence, without proof of its execution, if accompanied by possession, and a mere entry for the purpose of resurvey, has been considered *617 a sufficient possession.[1] Reid v. Eifert, (1 Nott & M’Cord, 374.) What are the reasons on which this rale is founded ? 1. That after a lapse of thirty years it is difficult, and in most cases impossible, to procure the witnesses to the deed. Those who are parties to a deed of thirty years standing, must be upwards of fifty years old, and a great portion of those who are born, die before that period. The second reason is, that a possession, or an exercise of ownership, under the deed, is calculated to give authenticity to it. In my own opinion there is a possession under this will, for I consider the possession of Rapley, who obtained his possession as the agent of Salvador, the possession of the devisees of Salvador. He would not be permitted to set up an adverse title to them, and it is not necessary by the statute of-, that he should have attorned. But if this be not clear, as is the opinion of my brethren, still the first reason of the rule applies to the case of this will, and another rule, in regard to papers other than deeds, is, that if they be found in the place in which they should be deposited, in pursuance of their object, that that circumstance, added to their being thirty years old, will raise a presumption in favor of their authenticity. Peake, 73. Phillips, 349. And Mr. Justice BuileR says, “ ancient writings, which are proved to have been found among deeds of evidences of land, may be given in <- ‘ evidence, although the execution cannot be proved; for it is hard to prove ancient things, and the finding- of them in such a place is a presumption that they were honestly and fairly obtained, and preserved for use, and are free from the suspicions of dishonesty.” N. P. 255. And Mr. Phillips, in pursuing the subject, observes, that “this observation on the necessity of showing where the deed was found, seems to apply more particularly to those cases, where the character and authenticity of old writings depend, in some degree, on the nature of the place or custody, in which they have been keptand when they are produced from their proper repository, and have been properly preserved, it will not, after a certain time, be necessary to prove them. Phillips, 350. Now the will in this case was taken from the Secretary’s Office, in Charleston, where, by the law then existing, all wills are required to be deposited, and is, upon the face of it, free from all suspicion of fraud, and appears to have been executed with all the formalities required by the statute. Again, in Phillips, 385, it is said, “ where the subscribing witnesses are dead, and no proof of their handwriting can be obtained, as must frequently happen in the ease of old wills, it will be sufficient to prove the signature of the testator alone.”[2] And the case of Calthorpe v. Gough, et al., (4 T. R. 707,) is referred to, and although this point was not finally determined in the case, yet it is the expression of an opinion of a distinguished judge, and supported by the authority of a case decided by Sir Lloyd Kenyon, Master of the Rolls. In this case the handwriting and seal of the testator to the will were proven, and his handwriting to a codicil, made in the year 1786, not long before his death, and proof of the handwriting of one of the subscribing witnesses to the codicil, by one who could not undertake to say he had ever seen him write, but from the subscribing witness’ having *been a notary public, he had seen much of what was acknowledged to be his writing. L s
*618 But it was said that there was no proof of the death of the subscribing witness; as to one, there was as much proof as is ever required. The witness, Mr. Rapley, says he has heard-that one of them was dead, and when it is recollected that the will was executed thirty odd years ago, and in England, I think it a fair presumption that the others are also dead.
The fourth ground requires no observation, for no argument is offered to show any irregularity in the proceedings, and none is apparent on the face of them.
The testator, by his will, devises his estate to his three daughters, in trust for his creditors.
The fifth ground, therefore, cannot avail the defendant, for the children of the testator, Salvador, I am inclined to think, must take, subject to the trust, or not at all. But if they were obliged to take by descent, their rights are protected by the 9th article of the treaty of I[1]? 94, which declares that British subjects shall hold as before the war.
Upon the sixth ground, I am of opinion that all the proof which the law requires in such cases, was given. It was proven that James Nicholson had been authorized to act for the heirs of Salvador, as attorney. But there was no necessity to prove anything about the power of attorney, in this case; that might have been a question in the Court of Equity, when the proceedings were going on there against the heirs of Salvador ; we have nothing to do with the agency; the plaintiff claims before us in his own right, under a deed to himself.
The two last grounds may be considered together; the jury were instructed, that if they believed that the real defendant, Adam M’Kee, had been in the possession of the land by his tenants, from the year 1805, to the commencement of this action, they ought to find for the defendant. *4091 ^ they doubted whether *these persons, who were said to have -* been in possession were the tenants of M’Kee ; yet, if they were satisfied that there had been a continued and uninterrupted possession, though of different persons, not conveying to each other, for that time, that then they ought to find for the defendant; and this I directed on the authority of the case of Mayrick v. White, MS.,[1] decided in this Court about the year 1808 or 1809 ; it was an action brought by myself. The case never met my approbation, but I considered myself bound by it. I am authorized to say, by my brethren, that they do not consider the case as authority, having only a verbal report of it. The question, then, whether these persons, said to be in possession, were the tenants of M’Kee, was one merely of fact, and for the determination of the jury. It was positively sworn to, so far as regarded the possession after the deed from Dixon to M’Kee. It was not clearly and satisfactorily proven as to all who occupied, that they were tenants. And I am not dissatisfied with the verdict. The jury were acquainted with the witnesses, and all the circumstances attending that sort of possession, and were, therefore, better qualified to determine on the fact than the Court.. Upon the whole, *619 the objections to the plaintiff’s title being overruled, and the jury having found against the defendants, on the facts, the motion is discharged.
Noble, for the motion. MDuffie, contra.
Nott, JohnsoN, RichaRDSOn, and HugeR, JJ., concurred.

 See 2 McC. 295.

 7 Rich. 225 ; 5 Rich. 272.

 See Cheves, 85 ; 1 Rich. 56 ; Rice, 100 ; 1 Sp. 191; 2 McM. 498.

 11 Stat. 41, § 11; 11 Rich. 305. Post. 570.

 This may he a misnomer of the case, Mazych v. Wight, 2 Brev. 151, A. D. 1807, in which the decision was contrary to Judge Colcock’s recollection of what had been previously held in this Court.